**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **(1) MICHAEL EUGENE JACKSON** | ) | |
| **(2) JAMES RAY MOORE** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **Case No.** CIV-14-1364-D |
| **v.** | ) | |
| | ) | |
| **(1) THE EDUCATION AND** | ) | |
| **EMPLOYMENT MINISTRY;** | ) | |
| **(2) JIM ROBERTSON, Individually** | ) | |
| **and in his official capacity;** | ) | |
| **(3) BERT BELANGER, Individually** | ) | |
| **and in his official capacity.** | ) | |
| **(4) KRIS STEELE, Individually and in** | ) | |
| **his official capacity;** | ) | |
| | ) | |
| **Defendants.** | ) | |

**COMPLAINT**

Plaintiffs, Michael Eugene Jackson and James Ray Moore, by and through their

attorneys, for their Complaint against Defendants, state as follows:

**NATURE OF THE CASE**

1.      This action is brought by Michael Eugene Jackson and James Ray Moore

(hereinafter "Plaintiffs" or "Jackson" and "Moore" respectively) and seeks redress for

wrongful discharge, racial discrimination, pursuant to 42 U.S.C. § 1981 as well as state

claims for  breach of fiduciary duty and breach of contract suffered in their capacities

as employees of The Education and Employment Ministry (hereinafter "T.E.E.M.").

**JURISDICTION AND VENUE**

2.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331,

1343, conferring original jurisdiction on this court of any civil action to recover damages

or to secure equitable relief under the Constitution, treaties, or any Act of Congress, including those providing for the protection of civil rights, such as 42 U.S.C. § 1981. This Court has supplemental jurisdiction over state law claims plead in this complaint pursuant to 28 U.S.C. § 1367.

3.      Venue is proper in the Western District of Oklahoma pursuant to 28 U.S.C. §1391, as all events described herein took place in the Western Judicial District and all parties reside, or are located within Western Judicial District of Oklahoma.

## PARTIES

4.      Plaintiff, Michael Eugene Jackson, is a citizen and resident of the state Oklahoma and a citizen of the United States.  Jackson worked for T.E.E.M. nine (9) years from May, 2004 to August, 2013.  Mr. Jackson is a black male over 40.

5.      James Ray Moore is a citizen and resident of the State of Oklahoma and a citizen of the United States.  Moore worked for T.E.E.M. for twenty-one (21) years from February, 1992 to August, 2013.  Mr. Moore is a black male over 40.

6.      Defendant T.E.E.M. is a local private non-profit entity wholly located within the Western Judicial District of Oklahoma and primarily located at 14 N.E. 13th Street, Oklahoma City, Oklahoma. T.E.E.M. is an interfaith, 501(c)3, nonprofit organization. T.E.E.M. has served Oklahomans in need with education, social services, job training and job placement assistance since 1987. The funding for the organization is based form the contribution of private individuals, and grant funding from the State of Oklahoma and the United States federal government, the United Way, Urban League and Central Oklahoma Workforce.

7.     Jim Robertson, white male, is presently Chairman of T.E.E.M.'s Board of Directors and served in that capacity at the time Plaintiffs were wrongfully discharged from employment.

8.     Bert Belanger, white male, is presently Vice-Chairman of T.E.E.M.'s Board of Directors and served in that capacity at the time Plaintiffs were wrongfully discharged from employment.

9.     Kris Steele, white male, is the current Executive Director of T.E.E.M., and was the Executive Director at the time Plaintiffs were wrongfully discharged from employment.


## FACTUAL ALLEGATIONS

10.     James R. Moore (21 years) and Michael E. Jackson (9 years) were long-term employees of T.E.E.M. at the time Kris Steele ("Steele") openly took over leadership of the agency in January, 2013.  At the time, both plaintiffs were members of the organization's Leadership Team, Moore serving as Director of Education, and Jackson serving as Executive Director, and previously as Associate Director of Programs.

11.     As a non-profit organization, T.E.E.M. sometimes struggled financially throughout Plaintiffs' tenure.  During those times, Plaintiffs would often defer or donate back a portion of their salaries.

12.     When Plaintiffs were employed with T.E.E.M., the organization's efforts were directed toward the reduction of poverty in Oklahoma City through education, social services, job training and placement, serving both men and women.

13.     In August, 2012, Plaintiff Jackson was approached by Bert Belanger and Board Member, Jerry Johnson, about serving as Executive Director for two years.  They explained that Jackson would receive no pay increase for taking on the duties.  Plaintiff Jackson accepted the offer and began serving as Executive Director in September, 2012.

14.     Plaintiff Jackson was named Executive Director because Tony Zahn, white male and the previous Executive Director, had been terminated by the Board effective July, 2012.  Mr. Zahn continued to receive pay for several months after his termination, functioning in an emeritus status and performing no duties.   Jackson performed those duties until being officially replaced by Kris Steele in January, 2013, more than a year prior to the term Jackson agreed to serve when asked by Bert Belanger.

15.     Kris Steele, unbeknownst to Plaintiffs, was actually put on T.E.E.M.'s payroll effective November, 2012.  Thus, in late 2012, T.E.E.M. was paying three different people to perform the same job function.

16.     Kris Steele was formerly a member of the Oklahoma Legislature.  During his time in the legislature, Steele's primary legislative focus was reforming Oklahoma's correctional processes through the Justice Reinvestment Initiative, which seeks to reduce the state's high incarceration rates through alternative programs and facilities in the private sector.  When Kris Steele was hired, he was paid the unprecedented salary of more than $100,000.00 per annum with fringe benefits.  Steele's salary was at least twice the amount Jackson received for serving as Executive Director.  Steele was paid

this salary despite the Board refusing to adequately compensate Mr. Jackson for performing those same duties.

17.     Since taking over as Executive Director of T.E.E.M., Steele has transformed the agency from one that primarily served the needs of Oklahoma's poor, to one primarily serves ex-convicts, capitalizing on the issue that was his legislative focus.     In published news reports, Steele has stated that the agency is being transformed into one that serves ONLY recently released prisoners.  The agency will no longer serve the State's poor and will concentrate on prisoners only so it can tap into funds that are available due, in large part, to laws that are a result of Steele's legislative focus on corrections' issues while an Oklahoma legislator.   However, none of the agency's corporate governance documents indicates this substantial change to T.E.E.M's mission.

18.     When Steele assumed the Executive Director Role, he changed Jackson's title to "Administrator," and provided no job description.

19.     Beginning in June, 2013, Steele began to discharge what appeared to be older employees and replace them with less qualified younger employees.  However, as it turns out, within approximately 12 months of taking over as T.E.E.M's Executive Director, Kris Steele got rid of every black male employed by T.E.E.M.

20.     On or about August 9, 2013, Moore and Jackson were terminated without warning or notice.  They were informed that they were being terminated because there was not adequate funding to retain them.  However, records reflect that T.E.E.M. spent $631,277.00 on compensation in 2012 and increased that expense $70,000.00 to

$701,759.00 by the end of 2013.  Additionally, there was an increase in revenue from 2012, $851,103.00 to 2013, $867,738.00.

21.    James R. Moore began his employment with T.E.E.M. in February, 1992. When he was terminated, he was serving as Director of Education for the organization. Michael E. Jackson began his employment with T.E.E.M. in May, 2004.  When he was terminated he was serving as Administrator of the organization. Neither plaintiff was offered or received any type of severance package. However, on at least four occasions in the past, T.E.E.M. provided severance packages to non-black employees.

22.    When the previous executive director, Tony Zhan, a white male, was discharged, he was allowed 5 months full pay and 2 months half pay while performing no duties.  When Mr. Zahn's executive duties were removed in the summer of 2012, Mr. Jackson performed those duties, until replaced by Steele in January, 2013.  Despite the fact that Jackson had accepted the Board's offer to serve as Executive Director for 2 years with no pay increase, the Board breached its oral contract with Jackson and neither offered nor provided him a severance package.

23.    Just Prior to their termination, Steele pressured both plaintiffs to complete a grant application for a grant from the United States Department of Labor in conjunction with Public Strategies that was dependent on Moore and Johnson's background and expertise.  In fact, both plaintiffs had to commit to servicing the grant if it was received.  Plaintiffs completed the work in April and in approximately May, 2013, T.E.E.M. was awarded a substantial grant.  Less than three months later, and despite the conditions of the grant, plaintiffs were terminated.

24.     By the time Steele completed his purge of the organization, not one black male that was employed at the time he took over remained.

## COUNT I
## DISCRIMINATION

Plaintiffs restate and reincorporate paragraphs 1-24 as if set forth fully herein.

25.     The Board of T.E.E.M., through its agent and employee, Defendant Kris Steel discriminated against Plaintiffs Moore and Jackson with respect to the terms, conditions and privileges of employment based on their race and color and in violation of 42 U.S.C. § 1981 and the equal protection clauses of both the Oklahoma and United States Constitutions.

26.     Both Plaintiffs were terminated under the pretext that T.E.E.M. lacked the funding to compensate them.  However, Steele was paid twice as much as Jackson was for performing the same duties.  Additionally, subsequently hired white and/or female employees were hired to perform the same duties as Moore and Jackson and compensated at a higher rate.

27.     The Board neither offered nor provided either Plaintiff, both members of the executive management team, a severance package, though previous white employees, including Tony Zahn, received severance packages.

## COUNT II
## CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS

Plaintiffs restate and reincorporate paragraphs 1-27 as if set forth fully herein.

28.     Kris Steele, Jim Robertson and Bert Belanger, and potentially other individual Board Members as discovery indicates, conspired and acted in concert to deny Plaintiffs their civil rights in direct contravention of 42 U.S.C. § 1985.

29.    The conspiratorial purpose was to deny them fair compensation and employment due to their race in contravention of their right to equal protection under the law.

30.    The conspiracy entailed pressuring the defendants to complete a grant to the U.S. Department of Labor, received, in large part, due to Plaintiffs' backgrounds and commitment to work the grant, as well as providing false information about T.E.E.M.'s financial status, mission and work.

31.    Defendants Steele, Robertson and Belanger, and potentially other Board members, intentionally interfered with Plaintiffs' exercise and enjoyment of clearly established rights secured by the state and federal constitutions or laws of the United States and the State of Oklahoma, depriving Plaintiffs of those rights and causing them injury.

32.    As a result of the concerted unlawful and malicious conspiracy of Steele, Robertson and Belanger, and potentially other Board members, Plaintiffs' were deprived of their right to equal protection of the laws.

33.    The conspiratorial acts of Defendants Steele, Robertson and Belanger, and potentially other Board members, is the proximate cause of Plaintiffs' injuries. Plaintiffs have incurred considerable legal debt which would not otherwise have been incurred, in addition to having lost wages and suffered emotional distress and other damages.

### COUNT III
### NEGLECT TO PREVENT INTERFERENCE WITH CIVIL RIGHTS

Plaintiffs restate and reincorporate paragraphs 1-33 as if set forth fully herein.

34.     Defendant Board of Directors were aware of Steele, Robertson and Belanger's conspiracy to interfere with Plaintiffs' civil rights.  The Board was aware that there was no financial condition preventing the continued employment of Plaintiffs and were also aware that the Board had offered and provided severance packages to previously discharged T.E.E.M. employees.

35.     Despite having the power to prevent the conspiracy to interfere with Plaintiffs' civil rights, the Board facilitated the deprivation, apparently voting to terminate Plaintiffs' employment and failing to offer or provide them severance packages.

36.     Plaintiffs were damaged by the Board's wrongful neglect and/or refusal to prevent or aid in preventing the conspiracy to interfere with Plaintiffs' civil rights.

## COUNT IV
## BREACH OF CONTRACT

Plaintiffs restate and reincorporate paragraphs 1-36 as if set forth fully herein.

37.     In August, 2012, Bert Belanger and Jerry Johnson, on behalf of the Board, offered Michael Jackson the Executive Director of T.E.E.M. for two years.  Though he understood there would be no additional compensation, Jackson accepted the Board's offer.

38.     In January, 2013, just months after he was offered the 2-year position, Kris Steele demoted Jackson to Administrator, breaching the 2-year oral contract between Jackson and the Board.

## COUNT V
## BREACH OF FIDUCIARY DUTY

Plaintiffs restate and reincorporate paragraphs 1 – 38 as if set forth fully herein.

39.     As Directors of T.E.E.M., each of the Board Members owe fiduciary duties of care, loyalty and good faith to T.E.E.M's employees, including Plaintiffs, as well as T.E.E.M. donors.   Defendant Board's fiduciary duties include obligations to exercise good business judgment, to act prudently in the operation of T.E.E.M's business, to discharge their actions in good faith and to put the interests of T.E.E.M before their own.

40.     Defendant Board breached its fiduciary duty of care by, among other things, mismanaging T.E.E.M. and failing to effectuate the mission of the entity as expressed in its governing corporate documents and applicable corporate law and in violation of public policy.

41.     Defendant Board breached its duty of loyalty and good faith by, among other things, violating the civil rights of its employees, including Plaintiffs, falsely representing T.E.E.M's financial condition to justify the violation of Plaintiffs' rights, and falsely representing the mission and work of the organization in order to procure grant funding in violation of public policy.

42.     Plaintiffs were damaged by Defendant Board's breach of its fiduciary duties.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court conduct a jury trial and enter judgment in their favor and against Defendants as follows: (1) Award Plaintiffs the value of all compensation and benefits lost as a result of Defendants' unlawful actions; (2) Award Plaintiffs the value of all compensation and benefits they will lose in the future as a result of Defendants' unlawful actions; (3) Award Plaintiffs compensatory damages; (4) Award Plaintiffs punitive damages; (5) Award Plaintiffs prejudgment

interest; (6) Award Plaintiffs attorneys fees, costs and disbursements; and, (7) Award such other and further relief as this Court deems applicable.

Respectfully Submitted,

CHANDA GRAHAM, PLLC
3601 N. Classen Blvd., Suite 108
Oklahoma City, Oklahoma  73118
Telephone:  (405) 601-6880
Facsimile:  (405) 601-6883

*/s Chanda R. Graham*
_____
Chanda R. Graham, OBA #17809


RONALD KELLY, P.C.
205 N.W. 63rd Street, Suite 150
Oklahoma City, Oklahoma  73116
Telephone:  (405) 235-1976
Facsimile:  (405) 286-6316

*/s Ronald Kelly*
_____
Ronald Kelly, OBA #4937


ATTORNEYS FOR PLAINTIFF