**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **1.  MICHAEL EUGENE JACKSON, and** | ) |
| **2.  JAMES RAY MOORE,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | )            **CIV-2014-1364-D** |
| | ) |
| **1.  THE EDUCATION AND** | ) |
| **EMPLOYMENT MINISTRY,** | ) |
| **2   JIM ROBERTSON, individually and** | ) |
| **in his official capacity,** | ) |
| **3.  BERT BELANGER, individually and** | ) |
| **in his official capacity,** | ) |
| **4.  KRIS STEELE, individually and** | ) |
| **in his official capacity,** | ) |
| | ) |
| **Defendants.** | ) |

**<u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>**

Respectfully submitted,

Melvin C. Hall, OBA #3728
Riggs, Abney, Neal, Turpen,
  Orbison & Lewis
528 NW 12th Street
Oklahoma City, OK  73103
Telephone: (405) 843-9909
Fax: (405) 842-2913
mhall@riggsabney.com

ATTORNEY FOR DEFENDANTS

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

INDEX OF EXHIBITS ..................................................................................... iii

INTRODUCTION .............................................................................................. 1

STATEMENT OF UNDISPUTED FACTS ........................................................ 3

SUMMARY JUDGMENT STANDARD ......................................................... 12

ARGUMENT AND AUTHORITY ................................................................. 13

    I. THERE IS NO EVIDENCE THAT PLAINTIFF'S ARE THE VICTIMS OF 42
    U.S.C. § 1981 RACE DISCRIMINATORY DISCHARGE ...................................... 13

        A.    Plaintiffs cannot prove a prima facie case of race discrimination discharge.
            ............................................................................................................. 13

        B.    Termination for financial and position elimination are legitimate
            nondiscriminatory reasons.......................................................................... 14

        C.    Plaintiffs cannot demonstrate pretext. ....................................................... 15

        D.    Individual liability under 42 U.S.C. § 1981. ............................................... 17

        E.    Plaintiffs were not discriminated against in violation of the equal protection
            clauses of the Oklahoma and United States Constitutions.......................... 19

    II. THERE IS NO EVIDENCE THAT PLAINTIFFS ARE THE VICTIMS OF A 42
    U.S.C. § 1985 CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS ................. 20

    III. PLAINTIFFS NEGLECT TO PREVENT INTERFERENCE WITH CIVIL
    RIGHTS CLAIM IS BARRED AS A MATTER OF LAW ...................................... 22

    IV. JACKSON'S BREACH OF CONTRACT CLAIM IS BARRED AS A MATTER
    OF LAW ............................................................................................................. 23

    V. PLAINTIFFS' BREACH OF FIDUCIARY DUTY CLAIM IS BARRED
    BECAUSE NO FIDUCIARY DUTY EXISTS BETWEEN A MANAGER AND A
    SUBORDINATE EMPLOYEE ............................................................................ 24

CONCLUSION .................................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**

*Adler v. Wal-Mart Stores, Inc.,* 144 F.3d 664 (10th Cir. 1998) ................................. 12, 13

*Anderson v. Coors Brewing Co.,* 181 F.3d 1171 (10th Cir. 1999) ................................... 18

*Brown v. Reardon,* 770 F.2d 896 (10th Cir. 1985) ............................................................. 21

*Browns v. Mitchell,* 409 F.2d 593 (10th Cir. 1969) ........................................................... 20

*Burton v. Wilmington Parking Authority,* 365 U.S. 715 (1961) ...................................... 19

*Campbell v. Amax Coal Co.,* 610 F.2d 701 (10th Cir. 1979) ............................................ 21

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986) .................................................................. 13

*Dalpiaz v. Carbon Cnty.,* 760 F.3d 1126 (10th Cir. 2014) ............................................... 18

*EEOC v. Flasher Co.,* 986 F.2d 1312 (10th Cir.1992) ...................................................... 14

*Elrod v. Sears, Roebuck and Co.,* 939 F.2d 1466 (11th Cir. 1991) .................................. 18

*English v. Colorado Dept. of Corrections,* 248 F.3d 1002 (10th Cir. 2001) ................... 13

*Etsitty v. Utah Transit Auth.,* 502 F.3d 1215 (10th Cir. 2007) ......................................... 14

*Griffin v. Breckenridge*, 403 U.S. 88 (1971) ..................................................................... 20

*Haddle v. Garrison,* 525 U.S. 121 (1998) ......................................................................... 20

*Hawkins v. Schwan's Home Services, Inc.,* 778 F.3d 877 (10th Cir. 2015) ..................... 18

*Hennagir v. Utah Dept. of Corr.,* 587 F.3d 1255 (10th Cir. 2009) .................................. 18

*Johnson v. Weld Cnty., Colo.,* 594 F.3d 1202 (10th Cir. 2010) ................................. 16, 19

*Jones v. Denver Post Corp.,* 203 F.3d 748 (10th Cir.2000) .............................................. 14

*Kendrick v. Penske Transportation Services, Inc.,* 220 F.3d 1220 (10th Cir. 2000) .. 15, 18

*Kiefner v. Sullivan*, 2014 WL 2197812 *9, U.S. Dist. Court, N.D. Okla, May 27, 2014 . 25

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 587 (1986) ....................... 12

*Miller v. Eby Realty Group, LLC,* 396 F3d 1105 (10th Cir. 2005) .................................. 16

*Morgan v. Hilti, Inc.,* 108 F.3d 1319 (10th Cir. 1997) ...................................................... 15

*Paris v. SW Tel. Co.,* 94 F.Appx 810 (10th Cir. 2004) ..................................................... 21

*Reeves v. Sanderson Plumbing Prods.,* 530 U.S. 133 (2000) ........................................... 15

*Rivera v. City and County of Denver,* 365 F.3d 912 (10th Cir.2004) ............................... 15

*Santistevan v. Loverridge,* 732 F.2d 116 (10th Cir. 1984) ............................................... 23

*Sayre v. St. Vrain Valley School Dist.,* 785 F.2d 862 (10th Cir. 1986) ............................ 17

*Swackhammer v. Sprint/United Mgmt. Co.,* 493 F.3d 1160 (10th Cir. 2007) .................. 17

*Tilton v. Richardson,* 6 F.3d 683 (10th Cir. 1993) ............................................................ 20

*Wulf v. City of Wichita,* 883 F.2d 842 (10th Cir. 1989) .................................................... 17

*Young v. Dillon Cos., Inc.,* 468 F.3d 1243 (10th Cir. 2006) ............................................. 16

*Zamora v. Elite Logistics,* 478 F.3d 1160 (10th Cir. 2007) .............................................. 13

**Statutes**

12 Okla.Stat. § 136 .................................................................................................. 2, 23
42 U.S.C. § 1981 ................................................................................................. passim
42 U.S.C. § 1985 ................................................................................. 2, 20, 21, 23
42 U.S.C. § 1986 ................................................................................. 2, 22, 23

**Rules**

Fed.R.Civ.P. 56(c) ..................................................................................................... 12

## INDEX OF EXHIBITS

1.    Affidavit of Kris Steele

2.    Deposition of Rhonda Thornburg

3.    Deposition of Kris Steele

4.    Deposition of Michael Jackson

5.    TEEM's Response to Plaintiffs' First Set of Interrogatories

6.    Deposition of James Moore

7.    Affidavit of Melissa Brumley

8.    TEEM's Homepage

Defendants, The Education and Employment Ministry (also known as TEEM), Jim Robertson, Bert Belanger, and Kris Steele (collectively "Defendants") by and through their attorney of record, Melvin C. Hall of Riggs, Abney, Neal, Turpen, Orbison & Lewis, file this motion for summary judgment and brief in support pursuant to Fed.R.Civ.P. 56.  In support of this motion Defendants state as follows:

## INTRODUCTION

The undisputed material facts of this case reveal that on August 9, 2013, Defendant, Kris Steele ("Steele"), Executive Director of TEEM, terminated the employment of Plaintiffs, Michael Jackson ("Jackson") and James Moore ("Moore") (collectively "Plaintiffs") for financial reasons. At that time TEEM was in a financial crisis, and it had become necessary for it to borrow money to make payroll. TEEM, under Steele's administration, had already terminated five employees because it could not afford to pay them. At the same time, TEEM was in the process of restructuring its services to focus exclusively on the convicted felon and formerly incarcerated population. Consequently, Jackson and Moore's positions as Administrator and Director of Education were eliminated. Most of their duties were eliminated. Any other duties they had previously performed were consolidated into the newly created position of Program Director and performed by Melissa Brumley, who, like Jackson and Moore, is African American.

Plaintiffs' Complaint [DKT #1] alleges five causes of action:

COUNT I: Discriminatory discharge in violation of 42 U.S.C. § 1981 and the equal protection clauses of both the Oklahoma and the United States Constitutions.

1

<u>COUNT II</u>: Conspiracy to interfere with civil rights in contravention of 42 U.S.C. § 1985.

<u>COUNT III</u>: Neglect to prevent interference with civil rights, apparently in contravention of 42 U.S.C. § 1986.

<u>COUNT IV</u>: Breach of Contract, a claim asserted by Jackson only.

<u>COUNT V</u>: Breach of Fiduciary Duty.

The undisputed material facts of the case demonstrate that each of Plaintiffs' five causes of action are either fatally defective as a matter of law, or Plaintiffs have failed to establish the claim as a matter of law.

Regarding Plaintiffs' Count I, Plaintiffs <u>cannot</u> establish a prima facie case of 42 U.S.C. § 1981 discriminatory discharge because it is undisputed that their positions were eliminated after discharge. Plaintiffs also <u>cannot</u> establish that Defendants' non-discriminatory reasons for their terminations were pretextual.

Plaintiffs' Count II is fatally defective because all of the allegations regarding a conspiracy are conclusory, without any factual support, and insufficient to meet the high standards required to state a claim under 42 U.S.C. § 1985(3).

Count III, which is apparently based on 42 U.S.C. § 1986, is barred by the running of the one year statute of limitations associated with this claim, and as a matter of law, must be dismissed if, as here, Plaintiffs' Count II § 1985(3) claim fails.

Plaintiffs' Count IV breach of contract claim is barred by the statute of frauds as a matter of law because 12 Okla.Stat. § 136, provides that agreements not to be performed within a year from the making thereof must be in writing. Here, Jackson admits that his oral agreement with Bert Belanger ("Belanger") and Jim Robertson ("Robertson") was for two years, and it was <u>not</u> reduced to writing. Therefore pursuant to 12 Okla.Stat. § 136, it

is invalid as a matter of law.

Plaintiffs' Count V claim is directed to TEEM's Board members, which Plaintiffs describe as "Defendant Board." However, Plaintiffs have <u>not</u> named the members of the TEEM Board of Directors as party defendants. Plaintiffs assert that Board members owe a fiduciary duty to Plaintiffs as employees of TEEM.  Defendants deny that any such fiduciary duty flows from the Board to TEEM's employees.  There is no Oklahoma case law suggesting that a manager owes general fiduciary duties to a subordinate employee simply by virtue of their relationship. Even if such an assertion had merit, Plaintiffs have not specifically identified Belanger and Robertson as Board members who owe a fiduciary duty to Plaintiffs as employees of TEEM. In other words, neither the named Defendants nor the unnamed Defendant, Board of Directors, owes fiduciary duties of care, loyalty and good faith to Michael Jackson and James Moore as employees of TEEM.

Finally, Defendants Belanger and Robertson should be dismissed from this case as a matter of law because the undisputed material evidence reveals that neither Belanger nor Robertson had any personal participation or involvement in Plaintiffs' terminations.

**STATEMENT OF UNDISPUTED FACTS**

**Defendant TEEM**

1.      Defendant, The Education and Employment Ministry is an interfaith 501(c)(3) nonprofit organization that is dedicated to breaking cycles of incarceration and poverty through education, personal development, and work readiness training. (Ex 8, TEEM's Home page http://www.teem.org/ (last visited November 16, 2014)).

2.      TEEM has served Oklahomans in need of education, social services, job

training, and job placement assistance since 1987. In the past 28 years, TEEM has served more than 13,000 Oklahomans. (Ex 8, TEEM's Home page http://www.teem.org/ (last visited November 16, 2014)).

3.      For most of its 28 years of existence TEEM's service model was to provide services to anyone and everyone who walked in off the street. (Ex 1, Steele's Aff, #6 and Ex 8, TEEM's Home page http://www.teem.org/ (last visited November 16, 2014)).

4.      In July and August 2011, TEEM was failing financially and changes were needed to streamline TEEM. The Board restructured TEEM.  (Ex 2, Thornburg's depo, pp. 15 & 16).

5.      During the time that the Board was restructuring TEEM, TEEM's finances were so strained that Executive Director Tony Zahn loaned TEEM $7,000 in order to make payroll. (Ex 2, Thornburg's depo, pp. 20 & 21).

6.      TEEM paid two weeks severance pay to the employees who were terminated in August 2011, during the initial restructure. (Ex 2, Thornburg's depo, pp. 38 & 39). Only the employees terminated in 2011 received two weeks of severance pay. Steele was not Executive Director in 2011. (Ex 2, Thornburg's depo, p. 41).

7.      TEEM's financial situation was so bad that its primary funder, United Way of Central Oklahoma ("United Way") placed TEEM on probation. United Way advised TEEM that it was administratively top heavy, meaning that it had too many employees classified as administration, as opposed to direct service.  The United Way also advised TEEM that its budget could not sustain its general operating costs, and required TEEM to submit monthly reports showing its financial status. (Ex3, Steele's depo, p. 51 & 52 and Ex

2, Thornburg's depo,pp. 28 & 29).

8.      In 2013, TEEM streamlined its objectives to reducing recidivism rates, strengthening families, and improving quality of life in greater Oklahoma City and its surrounding areas; providing effective, evidence-based pre- and post-release reentry services to nonviolent offenders transitioning into society; building positive relationships and effective support systems with participants to obtain successful outcomes; removing barriers to employment through occupational skills training, financial literacy instruction, cognitive behavioral courses, legal assistance, effective case management and job placement assistance; promoting public awareness of the benefits of effective re-entry programing; giving a hand up to reentering adults by providing the tools needed to refine skills, achieve goals, and obtain self-sufficiency; holistically preparing participants for employment and successful reintegration into society by incorporating mentoring, character building, life skills training, and confidence building; empowering participants to be productive, contributing members of the community; and breaking the generational cycles of incarceration and poverty. (Ex 1, Steele's Aff. #8).

**Defendant Kris Steele**

9.      Kris Steele became Executive Director of TEEM on November 26, 2012. Prior to joining TEEM, Steele, who is an ordained Baptist preacher, served as Associate Pastor at Wesley United Methodist Church in Shawnee. (Ex 1, Steele's Aff. #3).

10.      Steele also served in the Oklahoma State Legislature for 12 years. During this time he attained the position of Speaker of the House of Representatives in 2011 and 2012. (Ex 1, Steele's Aff. #4).

**Plaintiff Michael Jackson**

11.    Plaintiff Michael Jackson was employed by Defendant, TEEM on May 24, 2004; he was terminated on August 9, 2013. (Ex4, Jackson's depo. p. 10). Jackson was initially employed as a Case Manager. (Ex 4, Jackson's depo. p.9). Periodically, Jackson served as Executive Director. For example, for three months in 2005, he served in that position during the gap between the outgoing Executive Director, Don Vaught, and the incoming Executive Director, Tony Zahn. (Ex 4, Jackson's depo. p.11).

12.    After Tony Zahn became the Executive Director, he requested that Jackson serve in the capacity of Associate Director, along with providing Case Management. (Ex 4, Jackson's depo. p.12).

13.    In both cases, as Executive Director and Associate Director, Jackson's compensation as a Case Manager remained the same. (Ex 4, Jackson's depo. pp. 12 & 13). Jackson did <u>not</u> make a request to the Board to be compensated as the interim Executive Director, nor did he complain to the Board about not receiving additional compensation. (Jackson's depo. p. 14).

14.    Jackson was aware of TEEM's financial problems prior to Kris Steele coming on board. (Ex 4, Jackson's depo. p. 22). He was aware that TEEM frequently operated in the red, and that often his paycheck was delayed or late due to a lack of funds. (Ex 4, Jackson's depo. pp. 22 & 23). Jackson was also aware of TEEM's need to borrow money to make payroll. (Ex 4, Jackson's depo. p. 24). Jackson did <u>not</u> attribute the late paychecks to mismanagement. (Ex 4, Jackson's depo. p.26).

15.    Jackson claims he had a verbal agreement to serve as Executive Director. (Ex

4, Jackson's depo. p. 47). Jackson's alleged verbal agreement was to serve as Executive Director for two years. (Ex 4, Jackson's depo. p. 46).

16.     On November 26, 2012, Steele was employed as TEEM's Executive Director at a salary of $100,000. (Ex 2, Thornburg's depo, pp. 21 & 32). Jackson believed TEEM could not afford the $100,000 salary paid to Steele. (Ex 4, Jackson's depo. p. 32).

17.     After Steele became Executive Director, Tony Zahn's title was changed to Executive Director Emeritus, and his pay remained the same. (Ex 2, Thornburg's Depo, pp. 33 & 34).

18.     On May 1, 2013, Tony Zahn's pay was reduced to a transition pay of $2,000 per month until October 31, 2013. (Ex 2, Thornburg's Depo, pp. 34 & 35). Tony Zahn received his last paycheck on October 31, 2013. (Ex 2, Thornburg's Depo, p. 36). Tony Zahn did <u>not</u> receive a severance package. (Ex 5, TEEM's Response to Plaintiffs' First Set of Interrogatories #8 and Ex 3, Steel's depo, p. 48).

19.     Steele asked Jackson to identify employees to be laid off due to financial reasons. Jackson submitted two names: Gloria Carmichael (black) and Lynn Turner (white). (Ex 4, Jackson's depo. pp. 48 & 49)

20.     Jackson acknowledged other layoffs, including: Jamie Thompson (white), Isaac Harge (black), and Glen Denson (black). (Ex 4, Jackson's depo. pp. 50 & 51).

21.     Jackson was well aware that Steele only wanted to work with the convicted felon and formerly incarcerated population. Steele asked Jackson to provide him with a plan of how TEEM could provide services that would be in line with working only with Department of Correction inmates. (Ex 4, Jackson's depo. pp. 57 & 58).

7

22.     Prior to the shift of TEEM's focus to the convicted felon and formerly incarcerated population, TEEM served the homeless population, the poor population, the convicted felon population, individuals with disabilities, and just about anybody that walked through the front door. However, Steele's vision was to work with a population for which reimbursement would be available for the services TEEM provides. (Ex 4, Jackson's depo. pp. 58 & 60).

23.     After Steele was named Executive Director, Jackson never complained about anything. (Ex 4, Jackson's depo. p. 61). Jackson never had any discussions with any Board members about Steele discriminating against any African-American employees. (Ex 4, Jackson's depo. p. 63).

24.     Beginning in February 2014, TEEM was in a financial crisis. It had a bigger staff than it could afford to sustain. To make payroll TEEM took out a $70,000 line of credit (Ex 3, Steele's depo, pp. 62, 64, & 120), and terminated several employees, including Plaintiffs Michael Jackson and James Moore on or before August 9, 2013.

**Individuals Terminated by TEEM under Kris Steele's Leadership
Due to Financial Reasons**

| No. | Name | Race | Title | Date of Termination. |
|---|---|---|---|---|
| 1. | Carmichael, Gloria | Black | Instructor | February 7, 2013 |
| 2. | Cosar, Justeen | White | Job Developer | February 7, 2013 |
| 3. | Turner, Lyn | White | Instructor | February 7, 2013 |
| 4. | Niblett, Hollie | White | Director of Development | May 3, 2013 |

| 5. | Bradley, Laneeta | Black | Job Coach | May 29, 2013 |
| 6. | Plaintiff, Moore, James | Black | Director of Education | August 9, 2013 |
| 7. | Plaintiff, Jackson, Michael | Black | Administrator | August 9, 2013 |

(Ex 1, Steele's Aff, #9 and Ex 5, TEEM's Response to Plaintiffs' First Set of Interrogatories # 5).

25.     At the time of his termination, Jackson was serving in the capacity of Administrator. (Ex 4, Jackson's depo. pp. 15 & 16).

26.     On August 9, 2013, Steele called Jackson to his office and informed Jackson that as of that day, TEEM would no longer be able to employ him because TEEM could no longer pay his salary (Ex 4, Jackson's depo. pp. 64 & 65).

27.     Prior to Jackson's August 9, 2013 termination, he had not suffered any discrimination. (Ex 4, Jackson's depo. p. 66).

28.     After Jackson's August 9, 2013 termination, he did not request a severance. (Ex 4, Jackson's depo. pp. 75 & 84).

29.     Jackson agrees that Robertson, Belanger, or Steele never said anything that was racially derogatory, racially offensive, or racial. (Ex 4, Jackson's depo. p. 111).

30.     Jackson admits that he was replaced by Melissa Brumley, who is black. (Ex 4, Jackson's depo. p. 99).  Jackson admits that after his termination, Jackson's position as Administrator was eliminated. Some of the duties performed by both Jackson and Moore were consolidated under the new position of Program Director, now held by Melissa Brumley. (Ex 3, Steele's depo, p. 122).

**Plaintiff James Moore**

31.     Moore started working at TEEM in February 1992. (Ex 6, Moore's depo, p. 10). After working in various capacities at TEEM Moore became Director of Education. (Ex 6, Moore's depo, pp. 14-16). Michael Jackson was his supervisor. (Ex 6, Moore's depo, p. 25).

32.     Moore testified that the only date that he was discriminated against was the day of his termination, August 9, 2013. Prior to August 9, 2013, Moore had <u>not</u> complained about being the victim of discrimination. (Ex 6, Moore's depo, p. 51).

33.     Prior to August 9, 2013, Moore <u>did not</u> have any conversations with Kris Steele regarding being the victim of discrimination. (Ex 6, Moore's depo, p. 52). He <u>did not</u> have any conversations with his supervisor Michael Jackson, regarding being the victim of discrimination. (Ex 6, Moore's depo, p. 52). Moore <u>did not</u> have any conversations with any TEEM Board members about being the victim of discrimination. (Ex 6, Moore's depo, p. 53). Moore <u>had not</u> been referred to in a racially derogatory manner prior to his August 9, 2013 termination. (Ex 6, Moore's depo, p. 53).

34.     On August 9, 2013, Moore was called into a meeting with Kris Steele and Rhonda Thornburg. At this time Steele told Moore that his services were terminated because TEEM could not afford to fund his position. Significantly, Moore did not challenge Steele's assertion that TEEM could not afford his position (Ex 6, Moore's depo, p. 58).

35.     When asked the reason he terminated James Moore, Steele stated:

> **Q** Why did you terminate him [Moore]?
> **A** Primarily it was a financial decision. The -- TEEM had borrowed $40,000 -- maybe $40,000 one month to sustain payroll and to make, you know, to maintain our operating costs. We had a line of

> credit for $70,000 that we had been approved for approximately a
> month later, maybe two months later. I had to return and claim the
> remaining $30,000 within the line of credit just to make payroll.
> And we literally had a bigger staff than we could sustain.
>
> And in addition, we had made a determination to revise our
> mission statement and identify a target population and redo the
> programming within our organization.
>
> And so the introductory course that Mr. Moore was teaching
> and the individuals that he was supervising, I began to restructure
> the organizational to consolidate some of those administrative
> costs, and we pivoted to a new service model with new
> programming. And to be able to achieve efficiencies and fulfill our
> new mission statement, Mr. Moore was released from
> employment.

(Ex 3, Steele's depo, p. 55).

36.     At the time Moore's employment was terminated, he was Director of
Education.  No one was hired to fill that position after Moore's termination. (Ex 3, Steele's
depo p. 122).

37.     Some of the duties performed by both Jackson and Moore were consolidated
under the new position of Program Director that was held by Melissa Brumley. (Ex 1,
Steele's Aff, #9).

38.     Melissa Brumley's position is heavily funded through Work Ready
Oklahoma and Inasmuch Foundation. TEEM is under contract to provide the services that
Ms. Brumley's position renders. The positions held by Jackson and Moore has no source
of funding to sustain those positions. That is why they no longer exist. (Ex 3, Steele's depo,
pp. 90 & 91 and Ex 7, Brumley's Aff, #5).

39.     Moore understood that the duties of his position of Director of Education
were consolidated with those performed by Melissa Brumley. (Ex 6, Moore's depo, pp. 72
& 73).

40.     Moore never had any conversations with Bert Belanger or Jim Robertson concerning his employment or termination. (Ex 6, Moore's depo, pp. 107 & 108).

41.     Moore disagreed with TEEM's decision to lay him off based on financial reasons. (Ex 6, Moore's depo, pp. 119 & 120).

42.     In addition, TEEM reduced its administrative team from six individuals to four individuals. Before Jackson and Moore's terminations the Executive Team consisted of: Kris Steele (white), Michael Jackson (black), James Moore (black), Tony Zahn (white), Rhonda Thornburg (white), and Sarah Blaney (white). After Jackson and Moore's terminations the Executive Team consisted of Kris Steele (white), Melissa Brumley (black), Liz Young (black), and Lance Evan (black). (Ex 3, Steele's depo, pp. 122-124).

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).  In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir. 1998), *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

The moving party bears the initial burden of making a *prima facie* demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  See *Adler*, 144 F.3d at 670-671.  In attempting to meet that standard, a movant that will not bear the burden of persuasion at trial need not negate the non-movant's claim; rather, the movant need simply point out to the court a lack of evidence for the non-movant

12

on an essential element of the non-movant's claim. *Adler,* 144 F.3d at 671, *citing Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).

## ARGUMENT AND AUTHORITY

### I.
### THERE IS NO EVIDENCE THAT PLAINTIFF'S ARE THE VICTIMS OF 42 U.S.C. § 1981 RACE DISCRIMINATORY DISCHARGE

**A.    Plaintiffs cannot prove a prima facie case of race discrimination discharge.**

To establish a prima facie case of discriminatory discharge based on race, each Plaintiff must show that: (1) he belongs to a protected class; (2) he was qualified for the job; (3) despite his qualifications, he was discharged; and (4) the job was not eliminated after his discharge. *English v. Colorado Dept. of Corrections,* 248 F.3d 1002, 1008 (10th Cir. 2001). Although Plaintiffs' prima facie burden in a discriminatory discharge claim is described as "light" and "only the most baseless of claims fails to satisfy it," *Zamora v. Elite Logistics,* 478 F.3d 1160, 1171 (10th Cir. 2007), Plaintiffs, nevertheless, <u>cannot</u> satisfy the fourth element requiring that the job was not eliminated after they were discharged. In this case, both Jackson and Moore's positions were eliminated after their discharge as part of a total restructuring of the administration and operations at TEEM. Jackson admits that he was replaced by Melissa Brumley. (Ex 4, Jackson's depo, p. 143:18). Moore admits that Missy Brumley took Jackson's position (Ex 6, Moore's depo, pp. 72 & 74), and that after Jackson was terminated Brumley became Assistant Associate Director. (Ex 6, Moore's depo, p. 73).

**B.      Termination for financial and position elimination are legitimate nondiscriminatory reasons.**

Assuming for the purpose of this summary judgment motion only that Plaintiffs established a prima facie case, the burden now shifts to Defendants to articulate through admissible evidence some legitimate, nondiscriminatory reason for terminating Jackson and Moore. At this stage of the *McDonnel Douglas* frame work, a defendant need not "litigate the merits of the reasoning, nor does it need to prove that the reason relied upon was bona fide, nor does it need to prove that the reasoning was applied in a nondiscriminatory fashion." *Etsitty v. Utah Transit Auth.,* 502 F.3d 1215, 1224 (10th Cir. 2007) quoting *EEOC v. Flasher Co.,* 986 F.2d 1312, 1316 (10th Cir.1992). Instead, a defendant need only "explain its actions against the plaintiff in terms that are not facially prohibited..." *Id.,* quoting *Jones v. Denver Post Corp.,* 203 F.3d 748, 753 (10th Cir.2000).

Here Kris Steele provided two facially neutral reasons to support Jackson and Moore's terminations:

1. Jackson and Moore were terminated for financial reasons; TEEM could no longer afford to fund their positions (Ex 3, Steele's depo, p. 56); and
2. As part of TEEM's restructuring, it eliminated Jackson and Moore's positions and created a new position of Program Director, which is held by Melissa Brumley, with her salary funded by Work Ready Oklahoma and Inasmuch Foundation. (Ex 3, Steele's depo, p. 136).

Defendants' characterizations are corroborated by TEEM's success in targeting its services toward ex-convicts only. Specifically, TEEM has a larger budget with fewer employees while serving a significantly greater number of ex-offenders. (Ex 1, Steele's Aff. #10). A larger proportion of TEEM's investment is going directly to serving its clients. In other

words, the changes implemented by Kris Steele have been vindicated as not only necessary but correct. (Ex 3, Steele's depo, pp. 104-105).

**C.      Plaintiffs cannot demonstrate pretext.**

Pretext can be inferred from evidence revealing "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the employer's explanation for the termination. *Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1323 (10th Cir. 1997) (quotations omitted). Although a plaintiff need not employ any particular approach to show the defendant's stated reason for discharging him is pretextual, we identified three typical methods in *Kendrick v. Penske Transportation Services, Inc.*: (1) "evidence that the defendant's stated reason for the adverse employment action was false"; (2) "evidence that the defendant acted contrary to a written ... policy prescribing the action to be taken by the defendant under the circumstances"; or (3) "evidence that the defendant acted contrary to an unwritten policy or contrary to [the employer's] practice when making the adverse employment decision affecting the plaintiff." 220 F.3d 1220, 1230 (10th Cir. 2000) (quotations and citations omitted). Regardless of which methods the plaintiff uses, "[t]he relevant inquiry is not whether the employer's proffered reasons were wise, fair or correct, but whether it honestly believed those reasons and acted in good faith upon those beliefs." *Rivera v. City and County of Denver,* 365 F.3d 912, 924-25 (10th Cir.2004) (quotations omitted).

Plaintiffs rely on the first *Kendrick* method; asserting that Steele's stated reasons for their terminations are false. In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a

discriminatory purpose. *Reeves v. Sanderson Plumbing Prods.,* 530 U.S. 133, 134 (2000). This inference arises, however, only if the evidence of falsity would enable the factfinder to conclude "that discrimination was a determinative factor in the employer's actions-- simply disbelieving the employer is insufficient." *Miller v. Eby Realty Group, LLC,* 396 F3d 1105, 111 (10th Cir. 2005). It follows therefore, that "[t]he relevant inquiry is not whether the employer's proffered reason were wise, fair or correct, but whether it honestly believed those reason and acted in good faith upon those belief." *Young v. Dillon Cos., Inc.,* 468 F.3d 1243, 1250 (10th Cir. 2006).

Plaintiffs' belief that their employer "got it wrong" is not enough "to suggest that something more nefarious might be at play." *Johnson v. Weld Cnty., Colo.,* 594 F.3d 1202, 1211 (10th Cir. 2010). To establish pretext, a plaintiff must produce evidence that the employer did more than get it wrong.

> [H]e . . . must come forward with evidence that the employer didn't really believe its proffered reasons for action and thus may have been pursuing a hidden discriminatory agenda. This is because Title VII licenses [courts] not to act as a "super personnel department" to undo bad employment decisions; instead, it charges [courts] to serve as a vital means for redressing discriminatory ones.

*Id.*

The court's role is to prevent and redress employment discrimination, and not to act as a "super personnel department," second guessing employers' honestly held (even if erroneous) business judgments. *Young,* 468 F.3d at 1250 (quotation omitted).

The undisputed evidence establishes that Jackson and Moore's positions were eliminated and consolidated into a new position filled by an African American. Jackson and Moore's positions were eliminated following their terminations. TEEM created the position of Program Director, which is a substantially different job than the positions

Jackson and Moore had previously held. Melissa Brumley, an African American, was promoted to the position of Program Director. Brumley did not merely assume Jackson or Moore's old positions, she assumed a brand new position with expanded duties and responsibilities. (Ex 3, Steele's depo, pp. 90 & 91 and Ex 7, Brumley's Aff, #5). Absolutely no discriminatory motive can be inferred from an African American replacing African Americans whose jobs were eliminated as part of restructuring.

"Where the evidence of pretext supports only nondiscriminatory motives, such an inference is logically precluded and summary judgment for the employer is appropriate." *Swackhammer v. Sprint/United Mgmt. Co.,* 493 F.3d 1160, 1168 (10th Cir. 2007). In this case, there is no evidence to support an inference of discriminatory motive. Accordingly, Defendants' motion for summary judgment on Plaintiffs' discriminatory discharge claim should be sustained.

**D.     Individual liability under 42 U.S.C. § 1981.**

Plaintiffs have brought claims against Jim Robertson, Bert Belanger, and Kris Steele in their individual capacities [DKT #1, #7-9]. Regarding Robertson and Belanger, there is no evidence that they were personally involved in Jackson or Moore's terminations. Robertson and Belanger, as Board members of TEEM, did not request, recommend or initiate Plaintiffs' terminations. Decisions regarding personnel matters are the responsibility of TEEM's Executive Director, Kris Steele. It was Steele who made the decision to terminate Jackson and Moore for financial reasons as part of the restructuring of the agency to focus exclusively on ex-offenders and the formerly incarcerated.

Personal involvement sufficient for § 1981 liability may be shown by evidence of a causal connection between an individual's recommendation that an employee be terminated and the termination decision. *See Wulf v. City of Wichita,* 883 F.2d 842, 864 (10th Cir. 1989); *Sayre v. St. Vrain Valley School Dist.,* 785 F.2d 862, 868 (10th Cir. 1986); see also *Allen v. Denver Public School Bd.,* 928 F.2d 978, 983 (10th Cir. 1991), overruled on other grounds, *Kendrick v. Penske Transp. Servs., Inc.,* 220 F.3d 1220, 1228 (10th Cir.2000) (personal liability under section 1981 requires "some affirmative link to causally connect the actor with the discriminatory action"). Regarding Robertson and Belanger, there is no evidence of an affirmative link to connect them with Plaintiffs' terminations.

Kris Steele is not individually liable because he determined that TEEM could no longer afford to employ Jackson and Moore due to TEEM's restructuring to focus on ex-convicts and the formerly incarcerated, rather than the general public. Steele eliminated Jackson and Moore's positions and created the new position of Program Director, which would be performed by Melissa Brumley. Tenth Circuit precedent requiring courts to "weigh heavily the employer's judgments regarding whether a job function is essential," *Hennagir v. Utah Dept. of Corr.,* 587 F.3d 1255, 1262 (10th Cir. 2009) indicates that Kris Steele's judgment was justified. There is no doubt in this Circuit that "it is an employer's province to define the job and the functions required to perform it." *Hawkins v. Schwan's Home Services, Inc.,* 778 F.3d 877, 890 (10th Cir. 2015) quoting *Anderson v. Coors Brewing Co.,* 181 F.3d 1171, 1171 (10th Cir. 1999). Moreover, Federal courts "do not sit as a super-personnel department that reexamines an entity's business decisions. No matter how medieval a firm's practices, no matter how high-handed its decisional process, no

matter how mistaken the firm's managers, [§ 1981] does not interfere. Rather, our inquiry is limited to whether the employer gave an honest explanation of its behavior." *Elrod v. Sears, Roebuck and Co.,* 939 F.2d 1466, 1470 (11th Cir. 1991) (citations omitted). <u>See also</u> *Dalpiaz v. Carbon Cnty.,* 760 F.3d 1126, 1133 (10th Cir. 2014) (The court does not act as a super personnel department that second guesses employers' business judgments.) Under *McDonnel Douglas*, this Court's role is not to ask whether the employer's decision was wise, fair or correct, but whether it honestly believed the legitimate nondiscriminatory reasons it gave for its conduct and acted in good faith on those beliefs. *Johnson v. Weld County Colo.,* 594 F.3d 1202, 1211 (10th Cir. 2010). Based upon the undisputed evidence of this case, Kris Steele honestly believed his judgment regarding Jackson and Moore's positions, and he acted in good faith on those beliefs.

**E.    Plaintiffs were not discriminated against in violation of the equal protection clauses of the Oklahoma and United States Constitutions.**

In addition to claiming that Defendants discriminated against Plaintiffs based on their race and color in violation of 42 U.S.C. § 1981, Plaintiffs also assert that they were discriminated against in violation of the equal protection clauses of both the Oklahoma and the United States Constitutions. [DKT #1, #25]. This claim must be dismissed because it is undisputed and conceded by Plaintiffs that TEEM is a private non-profit 501(c)(3) organization. [DKT #1, p. 6]. Plaintiffs have made no allegations nor is there evidence that TEEM acted under the color of law.

The Tenth Circuit has explained:

It is axiomatic that the due process provisions of the Fourteenth Amendment proscribe state action only and do not reach acts of private persons unless they are acting "under color of state law." *United States v. Guest,* 383 U.S.

745, 86 S.Ct. 1170, 16 L.Ed.2d 239 (1966); *United States v. Price,* 383 U.S. 787, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966); *Evans v. Newton,* 382 U.S. 296, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966); *Burton v. Wilmington Parking Authority,* 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961); *Shelley v. Kraemer,* 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161, 3 A.L.R.2d 441 (1948); and the *Civil Rights Cases*, 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835 (1883). As Mr. Justice Clark put it in *Burton*, supra 365 U.S. at 722, 81 S.Ct. at 860:

> It is clear, as it always has been since the Civil Rights Cases * * * that "Individual invasion of individual rights is not the subject-matter of the [Fourteenth] amendment," * * * and that private conduct abridging individual rights does no violence to the Equal Protection Clause [and likewise the Due Process Clause] unless to some significant extent the State in any of its manifestations has been found to have become involved in it.

*Browns v. Mitchell,* 409 F.2d 593, 594-595 (10th Cir. 1969).

As applied to this case, neither the state nor any of its manifestations were involved in Plaintiffs' terminations. Therefore the Equal Protection Clause is <u>not</u> applicable.

## II.
## THERE IS NO EVIDENCE THAT PLAINTIFFS ARE THE VICTIMS OF A 42 U.S.C. § 1985 CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS

Although Plaintiffs do not specify the particular subsection of § 1985[1] upon which their claim is based, it is apparent that they allege a violation of 42 U.S.C. § 1985(3). The Tenth Circuit has explained the requirements for stating a claim under § 1985(3) as follows: (1) a conspiracy; (2) to deprive plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom. *Tilton v. Richardson,* 6 F.3d 683, 686 (10th Cir. 1993) (<u>citing</u> *Griffin*

---

[1] Clearly, Plaintiffs are not alleging a violation of 42 U.S.C. § 1985(2) because § 1985(2) prohibits conspiracies to injure a witness "in his person or property on account of his having so attended or testified" 42 U.S.C. § 1985(2); <u>see also</u> *Haddle v. Garrison,* 525 U.S. 121, 125 (1998).

*v. Breckenridge*, 403 U.S. 88, 102-03 (1971). Not all conspiracies are covered by § 1985(3). Only those motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus" are within the scope of the protections afforded under § 1985(3). *Griffin,* 403 U.S. at 101-02.

The Tenth Circuit has stated that § 1985(3) was intended "to provide redress for victims of conspiracies impelled by a commingling of racial and political motives." *Brown v. Reardon,* 770 F.2d 896, 907 (10th Cir. 1985). "[I]n the absence of allegations of class based or racial discriminatory animus, the complaint fails to state a claim under § 1985." *Campbell v. Amax Coal Co.,* 610 F.2d 701, 702 (10th Cir. 1979). The Tenth Circuit has consistently dismissed § 1985(3) claims devoid of racial, discriminatory animus. For example, in *Paris v. SW Tel. Co.,* the Tenth Circuit held that the plaintiff's hostile-work environment claim based on race failed because she did not show sufficient facts demonstrating a racial, discriminatory animus on the part of her managers at SW Tel. Co. She did not present facts sufficient to show that her managers conspired against her because she is African American and she presented no evidence showing that Caucasian employees who were similarly situated were treated more favorably than she was treated. See *Paris v. SW Tel. Co.,* 94 F.Appx 810, 815 (10th Cir. 2004).

As applied to this case, Plaintiffs have not shown any facts demonstrating a racial, discriminatory animus on the part of Steele, Robertson, or Belanger. Plaintiffs have not and cannot present facts to show that Steele, Robertson, or Belanger conspired against them because they are African American, nor have they presented any evidence showing that Caucasian employees, who were similarly situated, were treated more favorably than they

were treated. Quite the contrary, the undisputed evidence shows that prior to Jackson and Moore's terminations due to financial reasons, Steele had previously terminated five employees, three of whom were white: Justeen Cosar, Job Developer, terminated February 7, 2013; Lynn Turner, Instructor, terminated February 7, 2013; and Hollie Niblet, Director Development, terminated May 3, 2013. (Ex 1, Steele's Aff. #9).

Jackson admitted that neither Steele, Robertson, nor Belanger ever said anything that was racial or racially offensive. (Ex 4, Jackson's depo, p. 111). Jackson never had any discussions with any Board member about Steele discriminating against any African American employees. (Ex 4, Jackson's depo, p. 63). Moore testified that the only discrimination that he suffered occurred on August 9, 2013, the date of his termination. Prior to that date he had not complained about being the victim of discrimination. (Ex 6, Moore's depo, p. 51). Moore did not have any conversations with Steele or any Board member regarding being the victim of discrimination. (Ex 6, Moore's depo, pp. 52 & 53).

### III.
### PLAINTIFFS NEGLECT TO PREVENT INTERFERENCE WITH CIVIL RIGHTS CLAIM IS BARRED AS A MATTER OF LAW

Although Plaintiffs did not expressly cite 42 U.S.C. § 1986 as authority for this claim, it is apparent that their claim of "neglect to prevent interference with civil rights" [DKT #1, pp. 34-38] is made pursuant to § 1986, which states in its entirety:

**§ 1986. Action for neglect to prevent.**

Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have

22

prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action; and if the death of any party be caused by any such wrongful act and neglect, the legal representatives of the deceased shall have such action therefor, and may recover not exceeding $5,000 damages therein, for the benefit of the widow of the deceased, if there be one, and if there be no widow, then for the benefit of the next of kin of the deceased. **But no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued.** (emphasis added)

Jackson and Moore were terminated on August 9, 2013, but commenced this action more than a year later on December 9, 2014. Clearly, pursuant to § 1986, their neglect to prevent interference with civil rights claim is barred by the running of one year statute of limitations.

Even if Plaintiffs' § 1986 claim were not barred by the running of the one year statute of limitations, it would nevertheless be barred by the failure of Plaintiffs' § 1985(3) conspiracy claim because without a viable § 1985(3) claim, there cannot be a viable § 1986 claim for failure to stop the conspiracy. See *Santistevan v. Loverridge,* 732 F.2d 116, 118 (10th Cir. 1984) ("Hence there can be no valid claim under § 1986 of neglect to prevent a known conspiracy, in the absence of a conspiracy under § 1985.") Accordingly, Defendants are entitled to summary judgment on Counts II and III of Plaintiffs' Complaint.

## IV.
## JACKSON'S BREACH OF CONTRACT CLAIM IS BARRED AS A MATTER OF LAW

Plaintiffs' Count IV breach of contract claim appears to relate only to Jackson who alleges that in August 2012 he entered into an oral contract to serve as Executive Director for two years. [DKT #1, ¶¶ 22, 37, & 38]. Jackson's breach of contract claim is barred by 15 Okla.Stat. § 136, which provides that an agreement that, by its terms, is not to be

performed within a year from the making thereof must be made in writing. Pursuant to §

136, because Jackson's so-called oral contract was not rendered in writing and subscribed

by the party to be charged, it is invalid, and as a matter of Oklahoma contract law cannot

be enforced. Defendants are entitled to summary judgment on Plaintiffs' Count IV breach

of contract claim.

**V.**

**PLAINTIFFS' BREACH OF FIDUCIARY DUTY CLAIM IS BARRED BECAUSE
NO FIDUCIARY DUTY EXISTS BETWEEN A MANAGER AND A
SUBORDINATE EMPLOYEE**

Plaintiffs' breach of fiduciary duty claim is apparently directed at TEEM's Board of

Directors as a whole. Plaintiffs assert that "Defendant Board" breached its fiduciary duty

of care by, among other things, mismanaging T.E.E.M,… and failing to effectuate the

mission of the entity as expressed in its governing corporate documents, falsely

representing T.E.E.M's financial condition to justify the violation of Plaintiffs' rights, and

falsely representing the mission and work of the organization in order to procure grant

funding in violation of public policy. [DKT #1, ¶¶ 39-42].  Plaintiffs have not named the

Directors of TEEM or all of its Board members as parties to this litigation, and Plaintiffs'

allegations seem to suggest that the "Defendant Board" collectively had a fiduciary duty to

TEEM employees.

*Keifner v. Sullivan* has explained fiduciary relationships under Oklahoma law:

> A fiduciary relationship can arise as a matter of law. *See Lowrance v. Patton,*
> 710 P.2d 108, 111 (Okla. 1985) (listing guardian/ward, attorney/client, and
> principal/agent as examples of legal relationships that always impose
> fiduciary duties); Okla. Unif. Jury Instr. 26.2 (same). However, a fiduciary
> relationship may also arise as a matter of fact in "every possible case where
> there is confidence reposed on one side and resulting domination and
> influence on the other." *Lowrance,* 710 P.2d at 111. "[A] fiduciary

relationship springs from an attitude of trust and confidence and is based on some form of agreement, either expressed or implied, from which it can be said the minds have been met to create a mutual obligation." *Id.*; *see also* Okla. Unif. Jury Instr. 26.2 ("A fiduciary relationship exists whenever trust and confidence are reasonably placed by one person in the integrity and loyalty of another, and the other person knowingly accepts that trust and confidence and then undertakes to act on behalf of the person.").

**The Court is aware of no Oklahoma case law suggesting that a manager or general counsel owes general fiduciary duties to a subordinate employee simply by virtue of their legal relationship.** Law from other jurisdictions indicates that there is generally no fiduciary relationship flowing from an employer to an employee. *See, e.g., Combs v. Price Waterhouse Coopers, L.L.P.,* 382 F.3d 1196, 1200 (10th Cir. 2004) (noting that "while an employee normally owes fiduciary duties to his employer, employers do not generally owe fiduciary duties to employees") (applying Colorado law); *J.W. v. Johnston Cnty. Bd. of Educ.,* No. 5:11-CV-707, 2012 WL 4425439, at *14 (E.D.N.C. Sept. 24, 2012) ("North Carolina courts generally do not recognize fiduciary relationships between employers and employees.").

*Kiefner v. Sullivan*, 2014 WL 2197812 *9, U.S. Dist. Court, N.D. Okla, May 27, 2014

(emphasis added). Clearly, pursuant to *Kiefner*, no fiduciary relationship flows from an employer to an employee, and consequently, Plaintiffs' Count V breach of fiduciary duty claim must fail.

## CONCLUSION

The undisputed material facts of the case demonstrate that <u>each</u> of Plaintiffs' five causes of action are either fatally defective as a matter of law, or Plaintiffs have failed to establish the claim as a matter of law. Therefore, Defendants' motion for summary judgment should be granted in its entirety.

Respectfully submitted,

s/ Melvin C. Hall
Melvin C. Hall, OBA #3728
Riggs, Abney, Neal, Turpen,
  Orbison & Lewis
528 NW 12th Street
Oklahoma City, OK  73103
Telephone: (405) 843-9909
Fax: (405) 842-2913
mhall@riggsabney.com

ATTORNEY FOR DEFENDANTS

## CERTIFICATE OF SERVICE

This is to certify that on the 23rd day of November 2015; the above and foregoing

document was electronically transmitted using the ECF system for filing and transmittal of

a Notice of Electronic Filing to the following:


Chanda R. Graham
3601 N. Classen Blvd.
Suite 108
Oklahoma City, OK 73118

Ronald "Skip" Kelly
205 N.W. 63rd Street
Suite 150
Oklahoma City, OK 73116

s/Melvin C. Hall