# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MICHAEL EUGENE JACKSON, and<br>JAMES RAY MOORE,<br><br>  Plaintiffs,<br><br>v.<br><br>THE EDUCATION AND<br>EMPLOYMENT MINISTRY,<br>JIM ROBERTSON, individually and<br>in his official capacity,<br>BERT BELANGER, individually and<br>in his official capacity, and<br>KRIS STEELE, individually and<br>in his official capacity,<br><br>  Defendants. | Case No. CIV-14-1364-D |

## **O R D E R**

Before the Court is Defendants' Motion for Summary Judgment [Doc. No. 24] filed pursuant to Fed. R. Civ. P. 56. Defendants seek judgment as a matter of law on all claims. Plaintiffs have filed an amended response in opposition to the Motion [Doc. No. 39], and Defendants have replied [Doc. No. 38].

### **Factual Background**

Plaintiffs Michael Eugene Jackson and James Ray Moore are African American males who were longtime employees of Defendant The Education and Employment Ministry ("TEEM"). Plaintiffs were terminated from employment on August 9, 2013. Defendants assert Plaintiffs' terminations were due to TEEM's financial crisis and subsequent restructure ("Second Restructure"). Plaintiffs claim wrongful termination and, in connection therewith, allege the following: (1) discriminatory discharge in violation of 42 U.S.C. § 1981 and the equal protection clauses of both

the Oklahoma and the United States constitutions; (2) conspiracy to interfere with their civil rights in contravention of 42 U.S.C. § 1985; (3) neglect to prevent interference with their civil rights under 42 U.S.C. § 1986; (4) breach of contract;[1] and (5) breach of fiduciary duties.

## Standard of Decision

Summary judgment is proper "if the movant shows there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for either party. *Id*. at 255. All facts and reasonable inferences must be viewed in the light most favorable to the nonmoving party. *Id*. If a party who would bear the burden of proof at trial lacks evidence on an essential element of a claim, then all other factual issues concerning the claim become immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant bears the initial burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *Celotex*, 477 U.S. at 322-23. If the movant carries this burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671; *see also* Fed. R. Civ. P. 56(c)(1)(A). "The court need consider only the cited materials, but may consider other materials in the record." *See* Fed. R. Civ. P. 56(c)(3); *see also Adler*, 144 F.3d at 672. The Court's inquiry is whether the facts and evidence

---

[1] A claim for breach of contract is asserted by Jackson only.

identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

**Statement of Undisputed Facts**[2]

TEEM is a private non-profit organization as defined in 26 U.S.C. § 501(c)(3). Funded through grants and private individuals, TEEM has served Oklahomans in need of education, social services, job training, and job placement assistance since 1987. Defendant Jim Robertson is Chairman of TEEM's Board of Directors ("Board"). Defendant Bert Belanger is Vice-Chairman of TEEM's Board. Defendant Kris Steele is TEEM's current Executive Director.

Hired in February of 1992, Moore worked at TEEM for twenty-one years, eighteen of which he served as Director of Education. Moore holds bachelor's and master's degrees, both of which TEEM listed as supporting documentation in an application for a grant through the Department of Labor. Upon his termination, Moore's position and many of his duties were eliminated. Those duties that remained were consolidated into other employee positions, primarily the newly created position of Program Director filled by Melissa Brumley.

Jackson holds a bachelor's degree and accepted a position with TEEM in May of 2004. During his nine years with TEEM, Jackson served as Case Manager, Interim Executive Director, Associate Director, and Administrator. In all positions, Jackson's compensation remained consistent with the status of Case Manager. TEEM listed Jackson's degree as supporting documentation in an application for a grant through the Department of Labor. Upon his termination, the position of Administrator, which Jackson last held, was eliminated, as were many of his duties. Those duties

---

[2] This statement includes material facts presented by Defendants that are properly supported and not opposed in the manner required by Rule 56(c), as well as additional facts presented by Plaintiffs that are properly supported. All facts are stated in the light most favorable to Plaintiffs.

that remained were consolidated into other employee positions, primarily the newly created position of Program Director filled by Ms. Brumley.

While employed by TEEM, Plaintiffs donated a portion of their paychecks back to the ministry through the United Way of Central Oklahoma ("United Way"). Additionally, as members of the Executive Team, Plaintiffs received late paychecks when TEEM had insufficient funds to make payroll. Plaintiffs received only positive reviews of their job performance throughout their employment and, apart from a single incident involving a coworker's racial slur, neither Plaintiff complained of discriminatory treatment while employed by TEEM.

TEEM faced financial difficulties in 2011 and terminated several employees as part of a resulting restructure ("Initial Restructure"). Employees terminated during TEEM's Initial Restructure were offered a two-week severance. During the same time period, United Way placed TEEM on probation citing the following concerns: loss of government contracts; failure of the Board to adequately address funding problems; then Executive Director, Tony Zahn's extended sick leave; need for improved levels of participation in United Way functions and training; and need for regular communication with United Way staff. *See* Probation Notification Letter [Doc. No. 39-3] at 1-2. As a result, TEEM's 2012-2013 United Way funding was made available on a month-to-month basis dependent upon its continued implementation of a proposed improvement plan.

In late 2012, while Jackson was serving as Interim Executive Director but Mr. Zahn was still being paid the Executive Director salary, TEEM hired Steele to serve as Executive Director. Soon after, Steele initiated TEEM's Second Restructure, terminating seven people during a six-month period. Of those terminated, three were Caucasian and four, including Plaintiffs, were African American. After Plaintiffs' terminations, TEEM's Executive Team was restructured to consist of

4

one Caucasian and three African Americans, including one African American male. Additionally, TEEM re-focused its resources to mainly serve the ex-convict population.

## Discussion

### 42 U.S.C. § 1981

Plaintiffs assert claims against TEEM and Steel[3] of discriminatory termination under § 1981, which prohibits adverse employment actions based on an individual's race. *See* 42 U.S.C. § 1981. Plaintiffs offer no direct evidence of racial discrimination and rely solely on circumstantial evidence to support their claims. Therefore, the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) governs.[4] *See Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1216 (10th Cir. 2013); *Jones v. Denver Post Corp.*, 203 F.3d 748, 752 (10th Cir. 2000). Plaintiffs bear the initial burden of establishing a prima facie case of discrimination based on race. *McDonnell Douglas Corp.*, 411 U.S. at 802. If a prima facie case is successfully established, the burden then shifts to Defendants to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* at 802-803. If Defendants provide such a reason or reasons, then the burden shifts back to Plaintiffs to show that the proffered justification is merely a pretext for unlawful discrimination. *Id.* at 804.

---

[3] Plaintiffs concede in their response that Robertson and Belanger are not individually liable under 42 U.S.C. § 1981.

[4] "While *McDonnell Douglas* involved a Title VII claim for failure to hire, the analytical framework it pioneered applies equally to claims brought pursuant to section 1981." *Perry v. Woodward*, 199 F.3d 1126, 1135 (10th Cir. 1999); *see also English v. Colo. Dep't of Corr.*, 248 F.3d 1002, 1007 (10th Cir. 2001)*; Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1226 & n.4 (10th Cir. 2000). To establish a prima facie case of discriminatory discharge under § 1981, traditionally a plaintiff needed to "show that: (1) he belongs to a protected class; (2) he was qualified for his job; (3) despite his qualifications, he was discharged; and (4) the job was not eliminated after his discharge." *Kendrick*, 220 F.3d at 1229.

The Court recognizes Plaintiffs' burden to establish a prima facie case is "slight" (*see Tabor*, 703 F.3d at 1216 n.4), and all facts and evidence presented must be viewed in the manner required by Rule 56. Even so, the Court finds that Plaintiffs have not sufficiently met their prima facie burden. Although Plaintiffs have satisfied the initial three elements of a prima facie case of discriminatory discharge – (1) Plaintiffs are members of a protected class, (2) who were qualified for their jobs, and (3) despite their qualifications, were terminated, – upon termination, their duties were consolidated and their positions eliminated.[5] Therefore, to satisfy the fourth element of their prima facie case, Plaintiffs must demonstrate that the circumstances surrounding their terminations give rise to an inference of racial animus. This they have failed to do.

Plaintiffs' claims of discriminatory discharge rest on three allegations: (1) every "black male" was terminated during TEEM's Second Restructure (Compl. [Doc. No. 1] at 5); (2) Plaintiffs were denied a two-week severance previously provided to Mr. Zahn and employees terminated during TEEM's Initial Restructure (*see* Jackson Dep. [Doc. No. 24-4] 110:16-110:18; *but see* Defs.' Resp. to Pls.' Interrogs. [Doc. No. 24-5] at 4 ("[Mr.] Zahn did **not** receive a severance package.")); and (3) the elimination of Plaintiffs' positions was pretext in and of itself (*see* Pls.' Resp. [Doc. No. 35] at 7).

---

[5] Defendants contend that Plaintiffs cannot establish a prima facie case of racial discrimination because their positions were eliminated after discharge. However, "[t]he Supreme Court recognized in *McDonnell Douglas* that the articulation of a plaintiff's prima facie case may well vary, depending on the context of the claim and the nature of the adverse employment action alleged." *Plotke v. White*, 405 F.3d 1092, 1099 (10th Cir. 2005) (citing *McDonnell Douglas Corp.*, 411 U.S. at 802 n.13). Further, this circuit has "noted that '[t]he elimination of the position ... does not necessarily eviscerate a plaintiff's claim that [his] discharge was ... motivated [by discrimination].'" *Id.* at 1100 (quoting *Woodward*, 199 F.3d at 1140 n.10). "The critical prima facie inquiry in all cases is whether the plaintiff has demonstrated that the adverse employment action occurred 'under circumstances which give rise to an inference of unlawful discrimination.'" *Id.* (quoting *Kendrick*, 220 F.3d at 1227).

Assuming it is true that every African American male employee was terminated during TEEM's Second Restructure, Plaintiffs still fail to establish an inference of unlawful discrimination based on race. Plaintiffs do not claim that every African American employed by TEEM was terminated during the Second Restructure, rather, just the African American males. Plaintiffs concede that African American females, specifically Ms. Brumley, continued to work at TEEM. The likely inference, if any, arising from such circumstantial evidence would be gender, not race, discrimination.

Plaintiffs and Defendants disagree as to whether Mr. Zahn, former Executive Director of TEEM, received a severance package upon his termination. However, this is not a question of material fact that would preclude summary judgment. Even if Mr. Zahn received a severance package, it would not entitle Plaintiffs to the same. Neither would the fact that employees terminated during TEEM's Initial Restructure received a two-week severance.

There are two initial problems with Plaintiffs' differential treatment argument. First, Plaintiffs and Mr. Zahn are not similarly situated. Neither are Plaintiffs and employees terminated during TEEM's Initial Restructure. "Similarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline." *Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1120 (10th Cir. 2007) (quoting *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir.1997) (internal quotations omitted)). Although Steel was in place at the time of Plaintiffs' terminations, during TEEM's Initial Restructure he was not Executive Director, and thus was not the supervisor in charge of hiring and firing or decisions regarding Mr. Zahn's termination and alleged severance. Second, differential treatment is a pretext argument that "does not automatically give rise to a [discrimination] claim." *Id.* Plaintiffs must first establish a

prima facie case, then "establish not only that differential treatment occurred, but also ... rule out nondiscriminatory explanations for the differential treatment." *Id.* at 1121 (citing *E.E.O.C. v. Flasher Co., Inc.*, 986 F.2d 1312, 1320 (10th Cir. 1992)).

Finally, Plaintiffs' pretext argument regarding the elimination of their positions similarly cannot be used to establish a prima facie case. "The question of pretext arises only in the third and final step of the *McDonnell Douglas* inquiry, after the plaintiff has successfully established a prima facie case of discrimination and the employer has successfully articulated a legitimate, nondiscriminatory reason for the termination." *Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1167 (10th Cir. 2007). Plaintiffs have not met their prima facie burden, they show no genuine issue of material fact regarding the elimination of their positions, and they rely on a pretext argument that cannot save their cause of action from summary judgment.

Although Plaintiffs fail to make out a prima facie case, even assuming they can do so, they cannot survive the rest of the *McDonnel Douglas* analysis. Defendants proffer two facially neutral reasons for Plaintiffs' terminations: (1) TEEM could no longer afford Plaintiffs' positions, and (2) Plaintiffs' positions were eliminated as part of TEEM's Second Restructure. Plaintiffs argue both reasons are pretext for Defendants' discriminatory conduct. According to Plaintiffs, TEEM could have afforded their positions if not for TEEM erring in paying three different people to perform the same job function and paying Steele an excessive salary. Plaintiffs further contend that TEEM was in a better financial situation in 2013, the year Plaintiffs' employment was terminated, than it was in the previous year. Finally, Plaintiffs contend that TEEM's Second Restructure was preplanned in that Steele knew all along he wanted to concentrate TEEM's outreach on ex-convicts – a goal in direct conflict with TEEM's governing corporate documents. Plaintiffs' arguments are unpersuasive.

8

Plaintiffs' "mere conjecture that [their] employer's explanation for ... adverse employment action[s] is a pretext for intentional discrimination is insufficient to preclude summary judgment." *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1408 (10th Cir. 1997), cert. denied (citing *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1491 (10th Cir.1995)). Rather, Plaintiffs "must come forward with evidence that the employer didn't really believe its proffered reasons for action and thus may have been pursuing a hidden discriminatory agenda." *Johnson v. Weld Cnty., Colo.*, 594 F.3d 1202, 1211 (10th Cir. 2010). As previously discussed, Plaintiffs fail to show the presence of a racial animus. Instead, their "evidence" of pretext merely demonstrates that they disagree with Defendants' management decisions. In such situations, the Court's "role is to prevent unlawful hiring practices, not to act as a 'super personnel department' that second guesses employers' business judgments." *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1330 (10th Cir. 1999). Accordingly, the Court grants summary judgment in favor of Defendants on Plaintiffs' claims of racial discrimination under 42 U.S.C. § 1981.

**Equal Protection**

Plaintiffs' Complaint further asserts claims of racial discrimination under the equal protection clauses of both Oklahoma and the United States constitutions. Plaintiffs concede in their Response, however, that neither equal protection clause is applicable to the present action because neither applies to individuals not acting under color of state law. *See Browns v. Mitchell*, 409 F.2d 593, 594-595 (10th Cir. 1969) (explaining "[i]t is axiomatic that the due process provisions of the Fourteenth Amendment proscribe state action only and do not reach acts of private persons unless they are acting 'under color of state law'" (citing *U.S. v. Guest*, 383 U.S. 746 (1966) (further citations omitted)). Therefore, the Court grants summary judgment in favor of Defendants on

9

Plaintiffs' claims of racial discrimination under the equal protection clauses of both Oklahoma and the United States constitutions.

**42 U.S.C. § 1985(3)**

Plaintiffs assert the following regarding a conspiracy to interfere with their civil rights in contravention of 42 U.S.C. § 1985(3): Steele, Robertson, and Belanger (1) conspired together[6] (2) to deny Plaintiffs fair compensation and employment because of their race, (3) including maintaining Plaintiffs' employment only long enough to use their background and expertise to obtain a federal grant, and then terminating Plaintiffs because of their race, and (4) Plaintiffs' subsequent injuries include legal debt, lost wages, and emotional distress. *See* Compl. [Doc. No. 1] at 7-8; *see also Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971) (providing the essential elements of a § 1985(3) claim). To be actionable, Plaintiffs' allegations must "support the requisite animus to deprive [them] of the equal enjoyment of legal rights because of their race." *Griffin*, 403 U.S. at 103.

As noted above, Plaintiffs have failed to establish the requisite racial animus for a prima facie case of discriminatory discharge. Consequently, Plaintiffs' § 1985(3) claims are not actionable. Therefore, the Court grants summary judgment in favor of Defendants on Plaintiffs' claims of conspiracy to interfere with their civil rights in contravention of 42 U.S.C. § 1985(3).

---

[6] Plaintiffs allege that, by approving of Steele's actions, Robertson and Belanger conspired with him. Pls.' Resp. [Doc. No. 35] at 8.

**42 U.S.C. § 1986**

Plaintiffs assert that TEEM, through its Board, neglected to prevent the alleged conspiracy to interfere with their civil rights. However, 42 U.S.C. § 1986 requires a "wrongful act be committed" before a third party can be liable for neglect to prevent. Plaintiffs have failed to establish a prima facie case of discriminatory discharge, and the Court has accordingly found their conspiracy claim unactionable. Therefore, Plaintiffs cannot succeed in their § 1986 claims. Additionally, even if Plaintiffs were able to establish the requisite racial animus and, therefore, properly bring an action under this statute, "no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued." *Id.* Plaintiffs were terminated on August 9, 2013, but commenced this action on December 9, 2014, after the running of the one year statute of limitations. Therefore, the Court grants summary judgment in favor of Defendants on Plaintiffs' § 1986 claims.

**Breach of Contract**

Jackson alleges that he entered into a verbal contract with Belanger and Jerry Johnson, the Board's Finance Chair, to serve as TEEM's Executive Director for two years without additional compensation, effective August 2012. *See* Jackson Dep. [Doc. No. 39-2] 17:16-17:21. Jackson further alleges that the contract was breached in January 2013, when Steele demoted him to Administrator. Defendants contend that Jackson's breach of contract claim is barred as a matter of law.

Contracts unable to be performed within a year of their making are subject to Oklahoma's Statute of Frauds, OKLA. STAT. tit. 15 § 136, which requires such contracts to be in writing.[7] The alleged contract could not be performed within a year, and no formal contract was signed by either Jackson or a member of TEEM's Board. However, Jackson alleges the contract was properly memorialized through Board meeting minutes. *See* Jackson Dep. [Doc. No. 24-4] 45:10-45:22. Assuming the Board minutes qualify as the requisite memorialization, Jackson has failed to demonstrate the minutes were "subscribed by the party to be charged." OKLA. STAT. tit. 15 § 136(1). Consequently, any action regarding a breach of the alleged contract is barred by statute. Accordingly, the Court grants summary judgment in favor of Defendants on Jackson's breach of contract claim.

**Breach of Fiduciary Duty**

Plaintiffs assert that, because of their dual employee/donor status, TEEM, through its Board, owed them fiduciary duties. Plaintiffs also assert that TEEM breached its fiduciary duty of care by, among other things, mismanagement and failing to effectuate its mission as expressed in its governing corporate documents. *See* Compl. [Doc. No. 1] at 10. Plaintiffs further assert that TEEM breached its fiduciary duty of loyalty, as well as its duty of good faith, by falsely representing its financial condition and mission. *Id.* However, Plaintiffs fail to cite any relevant authority in support of their assertions.

---

[7] "The following contracts are invalid, unless the same, or some note or memorandum thereof, be in writing and subscribed by the party to be charged ... :[a]n agreement that, by its terms, is not to be performed within a year from the making thereof." OKLA. STAT. tit. 15 § 136.

As Defendants correctly point out, "there is generally no fiduciary relationship flowing from an employer to an employee." *Kiefner v. Sullivan*, No. 13-CV-714-TCK-FHM, 2014 WL 2197812, at *9 (N.D. Okla. May 27, 2014) (citing *Combs v. Price Waterhouse Coopers, L.L.P.*, 382 F.3d 1196, 1200 (10th Cir. 2004)). Regarding duties owed to donors, assuming there are any, Plaintiffs fail to show negligence or deliberate disregard by TEEM in its decision making. Therefore, in the absence of law to the contrary, the Court grants summary judgment in favor of Defendants on Plaintiffs' breach of fiduciary duties claims.

## Conclusion

For these reasons, the Court finds that no genuine issues of material fact exist as to any of Plaintiffs' claims, and Defendants are entitled to summary judgment on all claims in Plaintiffs' Complaint.

IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment [Doc. No. 24] is GRANTED. Judgment shall be entered accordingly.

IT IS SO ORDERED this 9th day of June, 2016.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE